# EXHIBIT I

Trials@uspto.gov                                                                              Paper 18
571-272-7822                                                           Entered: February 28, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

NEXTREMITY SOLUTIONS, INC.,
ZIMMER BIOMET HOLDINGS, INC., and ZIMMER INC.,
Petitioner,

v.

EXTREMITY MEDICAL, LLC,
Patent Owner.

_____

IPR2022-00802
Patent 8,303,589 B2

_____

Before JEFFREY N. FREDMAN, JAMES A. WORTH, and
ROBERT A. POLLOCK, *Administrative Patent Judges*.

FREDMAN, *Administrative Patent Judge*.

PRELIMINARY GUIDANCE
PATENT OWNER'S MOTION TO AMEND

IPR2022-00802
Patent 8,303,589 B2

## I. INTRODUCTION

On August 16, 2022, we instituted trial as to claim 59 of U.S. Patent No. 8,303,589 B2 ("the '589 patent"). Paper 10. After institution, Patent Owner filed a Motion to Amend that is contingent on the patentability of claim 59. Paper 13 ("Motion" or "Mot."). Petitioner filed an opposition on February 8, 2023. Paper 16 ("Opp.").

In the Motion, Patent Owner requested that we provide preliminary guidance concerning the Motion in accordance with the Board's pilot program concerning motion to amend practice and procedures. Mot. 1; *see also* Notice Regarding a New Pilot Program Concerning Motion to Amend Practice and Procedures in Trial Proceedings under the America Invents Act before the Patent Trial and Appeal Board, 84 Fed. Reg. 9,497 (Mar. 15, 2019) (providing a patent owner with the option to receive preliminary guidance from the Board on its motion to amend) ("Notice"). We have considered Patent Owner's Motion and Petitioner's Opposition.

In this Preliminary Guidance, we provide information indicating our initial, preliminary, non-binding views on whether Patent Owner has shown a reasonable likelihood that it has satisfied the statutory and regulatory requirements associated with filing a motion to amend in an *inter partes* review and whether Petitioner (or the record) establishes a reasonable likelihood that the substitute claims are unpatentable. *See* Notice, 84 Fed. Reg. at 9,497 ("The preliminary guidance . . . provides preliminary, non-binding guidance from the Board to the parties about the [motion to amend]"); *see also* 35 U.S.C. § 316(d) (statutory requirements for a motion to amend); 37 C.F.R. § 42.121 (regulatory requirements and burdens for a motion to amend); *Lectrosonics, Inc. v Zaxcom, Inc.*, IPR2018-

IPR2022-00802
Patent 8,303,589 B2

01129, Paper 15 (PTAB Feb. 25, 2019) (precedential) (providing information and guidance regarding motions to amend).

For purposes of this Preliminary Guidance, we focus on the proposed substitute claim, and specifically on the amendments proposed in the Motion. *See* Notice, 84 Fed. Reg. at 9,497. We do not address the patentability of the originally challenged claim. *Id.* Moreover, in formulating our preliminary views on the Motion and Opposition, we have not considered the parties' other substantive papers on the underlying merits of Petitioner's challenges. We emphasize that the views expressed in this Preliminary Guidance are subject to change upon consideration of the complete record, including any revision to the Motion filed by Patent Owner. Thus, this Preliminary Guidance is not binding on the Board when rendering a final written decision. *See id.* at 9,500.

## II. PRELIMINARY GUIDANCE

A. Statutory and Regulatory Requirements

For the reasons discussed below, at this stage of the proceeding, and based on the current record, it appears that Patent Owner has not shown a reasonable likelihood that it has satisfied the statutory and regulatory requirements associated with filing a motion to amend.

1. Reasonable Number of Substitute Claims

| Does Patent Owner propose a reasonable number of substitute claims? (35 U.S.C. § 316(d)(1)(B)) |
|---|
| Yes. Patent Owner proposes no more than 1 substitute claim for each challenged claim. |

2. Respond to Ground of Unpatentability

| Does the Motion respond to a ground of unpatentability involved in the trial? (37 C.F.R. § 42.121(a)(2)(i)) |
|---|

3

IPR2022-00802
Patent 8,303,589 B2

> Yes.  Patent Owner responds to the grounds of unpatentability at page 3 of the Motion.  At least one amendment presented is responsive to a ground of unpatentability.  Petitioner does not argue otherwise.

3. Scope of Amended Claims

> Does the amendment seek to enlarge the scope of the claims?  (35 U.S.C. § 316(d)(3); 37 C.F.R. § 42.121(a)(2)(ii))

> No.  Each of the proposed substitute claims include narrowing limitations.  Petitioner does not argue otherwise.

4. New Matter

> Does the amendment seek to add new subject matter?  (35 U.S.C. § 316(d)(3); 37 C.F.R. § 42.121(a)(2)(ii))

> Yes.  On this record, we find Patent Owner has not set forth adequate written description support for the proposed amendment adding the limitation "wherein the recesses do not comprise surfaces that face each other."  Patent Owner relies on Figure 3A as well as the disclosure, "[f]irst end 302 has a plurality of substantially similar grooves 326 and 328, which form an "L-shape" with surface 330 of end 302."  Mot. 10 (citing Ex. 2003, 14:24–15:2; Fig. 3A).  The added limitation, however, is not limited to an L-shaped groove, and rather, appears to be a negative limitation that lacks descriptive support in the Specification of the '589 patent.  Our reviewing Court has held that there is written descriptive support for a negative limitation when there is a reason provided in the specification to exclude the feature from the claim, in this instance, facing surfaces.  *See Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1351 (Fed. Cir. 2012) (For negative claim limitations, like the no-loading-dose limitation at issue here, there is adequate written description when, for example, "the specification describes a reason to exclude the relevant [element]."  *See also Novartis Pharm. v. Accord*, 38 F.4th 1013, 1017 (Fed. Cir. 2022) ("While a negative limitation need not be recited in the specification in *haec verba*, there generally must be something in the specification that conveys to a skilled artisan that the inventor intended the exclusion, such as a discussion of disadvantages or alternatives. Consistent with our precedent in *Santarus*, *Inphi* and *Nike*, the written description requirement cannot be met through simple disregard of the presence or

4

IPR2022-00802
Patent 8,303,589 B2

> absence of a limitation … If, however, a patent owner could establish that a particular limitation would always be understood by skilled artisans as being necessarily excluded from a particular claimed method or apparatus if that limitation is not mentioned, the written description requirement would be satisfied despite the specification's silence.").
>
> At this stage of the proceeding, we agree with Petitioner that the Specification does not describe a reason to exclude facing surfaces, and it appears that facing surfaces would work equally well to couple the second member to an instrument. *See* Opp. 9–11.[1] Nor would facing surfaces necessarily be excluded. Indeed, it appears that if the recesses or grooves 326, 38 were C-shaped or V-shaped, which both have facing surfaces, instrument 120 would still be "coupled to the distal member 140 by coupling sides 426 and 428 of instrument 120 to respective grooves 326 and 328." Ex. 1001, 45–48. There does not appear to be any requirement that the surfaces do not face each other in order for coupling to occur. This limitation was not recited in the original claims, which only recited "a plurality of first and second grooves for coupling to an instrument." Ex. 2003, 24:7–8. For these reasons, the Specification does not provide a reason to exclude facing surfaces. Because Patent Owner has not, on this record, established written descriptive support for this negative limitation, this limitation adds new subject matter.

B. Patentability

For the reasons discussed below, at this stage of the proceeding, and based on the current record,[2] it appears that Petitioner (or the record) has shown a reasonable likelihood that proposed substitute claim 61 is unpatentable.

---

[1] Because we agree with Petitioner that there is not sufficient reason to exclude facing surfaces, we do not reach Petitioner's argument whether the surfaces of the '589 patent face each other.

[2] We express no view on the patentability of original claim 59 in this Preliminary Guidance. Instead, we focus on limitations added to proposed substitute claim 61 in the Patent Owner's Motion to Amend.

5

IPR2022-00802
Patent 8,303,589 B2

| Does the record establish a reasonable likelihood that proposed substitute claim 61 is unpatentable? |
|---|
| Yes.  On the current record, it appears that Petitioner has established a reasonable likelihood that proposed substitute claim 61 is unpatentable for at least one of the following reasons: (a) proposed substitute claim 61 fails to comply with the written description requirement of 35 U.S.C. § 112; and (b) proposed substitute claim 61 is unpatentable under 35 U.S.C. § 102(b) or 35 U.S.C. § 103(a).<br><br>*Written Description*<br><br>Petitioner contends that proposed substitute claim 61 fails to comply with the written description requirement at least for the same reasons that the proposed substitute claim seeks to add new subject matter.  Opp. 9–15.<br>Based on the current record, it appears that the original disclosure of the '589 patent does not provide sufficient written description support for the added limitation "wherein the recesses do not comprise surfaces that face each other," as recited in proposed substitute claim 61 for the reasons previously described in Section II.A.4 of this Preliminary Guidance.<br><br>*35 U.S.C. § 102(b)/35 U.S.C. § 103(a)*<br><br>*Ex. 1013 - Jellicoe*<br><br>Petitioner contends that claim 61 is anticipated by, or rendered obvious over Jellicoe.  Opp. 16.  According to Petitioner, "Jellicoe discloses a fixation system for compressing bone comprising intermedullary rod 10, a locking nail drill guide 11 and locking nails 13."  *Id.* at 16–17 (citing Ex. 1013, 3:8–13; Ex. 1012 ¶ 61).  Petitioner asserts that Jellicoe meets the claimed first screw member because "Jellicoe discloses locking nails 13, as a first member, having a head, a shaft and a longitudinal axis.  *Id.* at 17 (citing Ex. 1013, 2:48–50, Fig. 9; Ex. 1012 ¶ 62).  Petitioner contends that Jellicoe meets the claimed second member because "Jellicoe discloses intermedullary rod 10 (second member), comprising a shaft 19 extending along a longitudinal axis and a bore 23 extending through shaft 19 along a bore axis.  *Id.* at 17–18 (citing Ex. 1013, Fig. 2; Ex. 1012 ¶ 63).  Petitioner asserts that Jellicoe also meets the claimed instrument because "Jellicoe discloses locking nail drill guide 11 adapted for coupling screw 13 to rod 10.  *Id.* at 18 (citing Ex. 1013, Fig. 10; Ex. 1012 ¶ 64).  According to Petitioner, Jellicoe also couples the members as recited.  *Id.* at 18–19 (citing Ex. 1013, 3:25–30, 5:32–37, Fig. 2, 11; Ex. 1012 ¶¶ 66–67). |

IPR2022-00802
Patent 8,303,589 B2

> Petitioner asserts, "[i]f the phrase 'adapted for residing substantially within at least one bone in the mid-foot region' is not merely an intended or method of use, this limitation is either inherently disclosed or rendered obvious in view of Jellicoe." *Id.* at 20 (citing Ex. 1012 ¶ 69). Specifically, Petitioner's expert opines that because the '589 patent does not disclose any specific "structural components" that are unique to bones in the midfoot region, "a POSITA could apply rod 10 and locking screw 13 in Jellicoe to the bones in the midfoot region." Ex. 1012 ¶ 69. Petitioner further asserts that Jellicoe's second member has first and second circumferentially spaced recesses adapted for coupling the instrument, because "Jellicoe discloses rod 10 having first and second circumferentially spaced recesses formed by a 'L-shape' at the junction of shaft 19 and cylindrical portion 18 formed with a pair of diametrically opposed flats 22" that engage a pair of projections 27 on the instrument. *Id.* at 20–21 (citing Ex. 1013, 3:20–23, 3:51–55, Figs. 2, 10; Ex. 1012 ¶¶ 70–71). According to Petitioner, because Jellicoe's flats 22 are "L-shape," "Jellicoe's surfaces on the recess are oriented at 90 degrees and thus do not face each other." *Id.* at 21–22 (citing Ex. 1012 ¶ 73).
>
> On this record, it appears that Petitioner has shown a reasonable likelihood that Jellicoe teaches or suggests the added limitations of claim 61. The added limitation of "adapted for residing substantially within at least one bone in the mid-foot region" appears to be an intended use type recitation in a product claim. Patent Owner has not identified differences in structure that the Specification teaches is necessary to adapt the device. *See In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Circ. 1997) ("the burden shifted to Schreiber to show that the prior art structure did not inherently possess the functionally defined limitations of his claimed apparatus."). Rather, the Specification discloses that the invention relates "to an intramedullary fixation assembly used for internal fixation of angled joints, bones and deformity correction," that "may be utilized to treat *any* bones in human body." Spec. 1:15–17, 2:2–3 (emphasis added). Jellicoe discloses "a rod adapted for insertion into the medullary canal of a bone." Ex. 1013, p. 2, 1:46–48. Given that the Specification does not describe any specific structure that is required to adapt the device for use in the mid-foot region, at this stage of the proceeding, we find persuasive the opinion of Petitioner's expert that a person of ordinary skill could adapt Jellicoe's rod and screw to reside within a bone in the mid-foot region. For the limitation "wherein the recesses do not comprise surfaces that face each other," this appears to depicted in Figure 2 of Jellicoe, reproduced below.

IPR2022-00802
Patent 8,303,589 B2



FIG. 2

Figure 2 is a side elevational view of a rod that is to be inserted into the medullary canal. Ex. 1013, 2:19–24. We agree with Petitioner that flats 22 appear to be L-shape that have surfaces that do not face each other. *See id.* at 3:20–23 ("The junction of shaft 19 and cylindrical portion 18 is formed by a pair of diametrically opposed flats 22."). For these reasons, Petitioner has shown a reasonable likelihood that claim 61 is anticipated by, or would have been obvious over Jellicoe.

*Brumfield, Marcus or Chandran*

Petitioner contends that each of Brumfield, Marcus or Chandran [] anticipate and/or render obvious claim 61." Opp. 22.

Patent Owner disagrees and asserts, "Brumfield, Marcus, Chang, Matthews, and Durham are all directed to apparatuses for treating fractures in the femur (thigh bone) and/or humerus (upper arm bone). Chandran is directed to fusing bones in the ankle." Mot. 12. According to Patent Owner, "[n]one of the apparatuses disclosed in those references include members adapted for residing within bones in the mid-foot region, as recited in proposed substitute Claim 61." *Id.* at 12–13.

Petitioner asserts, "each of the fixation systems disclosed in these references are capable of being used in bones in the mid-foot region." Opp. 22 (citing Ex. 1012 ¶ 75). According to Petitioner, using the member in "the mid-foot region would simply require a POSITA to choose the right sizing to fit the foot bones and the desired anatomical angle." *Id.* at 23. Petitioner's assertions are supported by the testimony of its expert, Mr. Sherman, who states that an ordinary artisan "would understand the anatomy of the bones in a foot and the design modifications required to adapt the fixation assemblies disclosed in Brumfield, Marcus or Chandran to substantially reside in the bones of the mid-foot." Ex. 1012 ¶ 76. According to Mr. Sherman, "[t]his would simply require selecting the right sized screw or member to fit within a particular bone." *Id.*

On this record, it appears that Petitioner has shown a reasonable likelihood that Brumfield, Marcus, or Chandran teaches or suggests the added limitation of "adapted for residing substantially within at least one bone in the mid-foot region." As discussed above, this limitation appears to be an intended use type

IPR2022-00802
Patent 8,303,589 B2

recitation and Patent Owner has not identified differences in structure that the Specification teaches is necessary to adapt the device. Petitioner has shown a reasonable likelihood that a person of ordinary skill in the art would have been capable of adapting the members for use in a mid-foot region, and would have had a reasonable expectation of success in doing so.

For the limitation "wherein the recesses comprise surfaces that do not face each other," Patent Owner asserts that "slots 42 disclosed in Brumfield comprise surfaces that *do* face each other," and that "grooves 62 and 70 disclosed in Marcus comprise surfaces that *do* face each other." Mot. 20. Patent Owner also asserts that "slots 129 disclosed in Chandran comprise surfaces that *do* face each other." *Id.* at 22.

Petitioner asserts that "it would have been obvious to modify" the references to include this limitation as "an obvious reversal of parts or rearrangement of parts." *Id.* at 23–24. We reproduce below Petitioner's examples of reversed arrangements.

| **Disclosed Arrangement** | **Reversed Arrangement** |
|---|---|
| **Brumfield** | **Brumfield** |
| Instrument: | Instrument: |
| Second Member: | Second Member: |
| **Marcus** | **Marcus** |
| Instrument: | Instrument: |
| Second Member: | Second Member: |

Petitioner's depicted reversed arrangements reverse the projections and slots of both Brumfield and Marcus so that the projections are on the second member as opposed to the instrument. *See id.* at 24. According to Petitioner, "as acknowledged by the Patent Owner's and Petitioner's experts, each arrangement is a simple reversible male-female connection which performs the same purpose and function." *Id.* at 25 (citing Ex. 1012 ¶ 81; Ex. 1019, 151:16–153:11,

9

IPR2022-00802
Patent 8,303,589 B2

158:20–160:7, 160:9–161:23). Petitioner asserts that the reversed arrangement includes "surfaces that do not face each other," as depicted in the Figure below.



Petitioner's Figure shows an end view of a hollow, rod-shaped element having two rectangular, box-shaped projections, and annotated by Petitioner to include labels to denote the surfaces. Petitioner includes a plurality of lead lines pointing to the end surface of the hollow element and to sides of the box-shaped projections. Inside a box at an end of a first set of the plurality of lead lines, Petitioner includes the label "Surfaces of first recess that do not face each other" and inside a box at an end of a second set of the plurality of lead lines, Petitioner includes the label "Surfaces of second recess that do not face each other." *Id.* at 23.

On this record, it appears that Petitioner has shown a reasonable likelihood that Brumfield, Marcus, or Chandran teaches or suggests the added limitation of "wherein the recesses comprise surfaces that do not face each other." At this stage of the proceeding, we agree with Petitioner that reversing the location of the male and female parts would not affect the coupling function. Petitioner has shown a reasonable likelihood that a person of ordinary skill in the art would have reversed these parts as "a simple design choice" using "a simple male-female coupling." *See* Ex. 1012 ¶ 81. The reversal of location also appears to meet the added limitation that the surfaces do not face each other because the prongs of Brumfield and the lugs of Marcus appear to be rectangular projections with the sides of the rectangle having right angle surfaces that do not face the surface from which they project.

*Indefiniteness*

No. On the current record, it appears that Petitioner has not established a reasonable likelihood that proposed substitute claim 61 is unpatentable as failing to comply with the definiteness requirement of 35 U.S.C. § 112.

IPR2022-00802
Patent 8,303,589 B2

> Petitioner asserts that the limitation "face each other" is indefinite. Opp. 15. According to Petitioner, "Patent Owner provides no claim construction for the phrase 'face each other,'" and there is no guidance "in the specification or prosecution history to allow a POSITA to determine with reasonable certainty the meaning of this phrase." *Id.*
>
> Indefiniteness requires the claim to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 (2014). The Specification discloses a preferred embodiment having an "L-shape," which appears to include two surfaces that are at 90 degrees to each other and that do not face each other. Although we appreciate that "surfaces at 85 degrees 'could' face each other" (Opp. 15), an ordinary artisan would be able to distinguish between these two angles and discern with reasonable certainty whether the surfaces face each other. Based on the current record, we do not agree with Petitioner that the term "face each other" is indefinite.
>
> Based on the assumptions described above, at this preliminary stage of the proceeding, it appears that Petitioner may have shown a reasonable likelihood that proposed substitute claim 61 is unpatentable. We acknowledge that Patent Owner has not yet had the opportunity to provide arguments and evidence against Petitioner's challenge based on Jellicoe, or to address the declaration of Mr. Sherman submitted in support of the Opposition. Nor has Patent Owner had the opportunity to provide arguments and evidence against obviousness Petitioner's challenges based on Brumfield, Marcus, and Chandran. Patent Owner will have the opportunity to do so in its reply to Petitioner's Opposition (or in a revised motion) in this proceeding.

### III. CONCLUSION

This concludes the Preliminary Guidance, which is Patent Owner's first option under the Board's pilot program. Notice, 84 Fed. Reg. at 9,497. Patent Owner has an additional option under the Board's pilot program to file a revised Motion to Amend by DUE DATE 3. Paper 11.

In addition to those two options under the Board's pilot program, Patent Owner is reminded that amendments of the challenged claim may also be pursued

11

IPR2022-00802
Patent 8,303,589 B2

in a separate reissue or reexamination proceeding before, during, or after an AIA trial proceeding, including subsequent to the issuance of the Final Written Decision.  We draw Patent Owner's attention to the April 2019 *Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding*.  *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019).  If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices.  *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

IPR2022-00802
Patent 8,303,589 B2

FOR PETITIONER:

Brett Hutton
Nicholas Mesiti
HESLIN ROTHENBERG FARLEY & MESITI
Briett.hutton@hrfmlaw.com
nm@hrfmlaw.com


FOR PATENT OWNER:

David Lindenbaum
KELLEY DRYE & WARREN LLP
dlindenbaum@kelleydrye.com