IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EXTREMITY MEDICAL, LLC,<br><br>                Plaintiff,<br><br>         v.<br><br>NEXTREMITY SOLUTIONS, INC.,<br>ZIMMER BIOMET HOLDINGS, INC., and<br>ZIMMER, INC.,<br><br>                Defendants. | Civil Action No. 22-239-GBW |

**MEMORANDUM ORDER**

Pending before the Court is Defendants Nextremity Solutions, Inc., Zimmer Biomet Holdings, Inc., and Zimmer, Inc.'s ("Defendants") Motion for Attorneys' Fees and Costs pursuant to § 285 of the Patent Act and the Court's inherent authority. D.I. 34, D.I. 35. Plaintiff Extremity Medical, LLC ("Plaintiff") opposes Defendants' Motion. D.I. 38. For the following reasons, the Court finds that this is an exceptional case that warrants the award of some fees incurred by Defendants. Thus, Defendants' Motion for Attorneys' Fees and Costs is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows. Defendants' Motion for Attorneys' Fees and Costs is **GRANTED** with respect to costs incurred by Defendants during the district court litigation and **DENIED** with respect to costs and fees incurred by Defendants during the inter partes review ("IPR") proceeding before the Patent Trial and Appeal Board (the "Board").

I. **LEGAL STANDARD**

Section 285 permits the Court to award "reasonable attorney fees to the prevailing party" only "in exceptional cases." 35 U.S.C. § 285. "[W]hether a case is exceptional under 35 U.S.C. § 285 ... is a matter of Federal Circuit law." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (Fed. Cir. 2004). Pursuant to Federal Circuit precedent, an exceptional case is "one

that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

"In weighing the evidence, the district court may consider, among other factors, 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (cleaned up) (quoting *Octane Fitness*, 572 U.S. at 554 n. 6). "A party seeking fees under § 285 must prove" that the case is exceptional "by a preponderance of the evidence." *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th 1285, 1294 (Fed. Cir. 2023). A party does not meet its burden merely because it is the prevailing party under the patent laws. *See SFA Sys. v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ("[I]t is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." (quoting *Octane Fitness*, 134 S. Ct. at 1756)).

## II. DISCUSSION

### A. The totality of the circumstances demonstrate that this is an "exceptional" case.

The parties do not dispute that Defendants are the "prevailing parties" as required under § 285. Accordingly, Defendants' entitlement to recover fees pursuant to § 285 turns on whether the Court finds that the present case is exceptional. *Octane*, 572 U.S. at 554. Considering the totality

of the record, and for the reasons discussed below, the Court finds that this case is exceptional within the meaning of § 285.

"Among the more common bases for a finding of exceptionality are demonstrating: (1) failure to conduct adequate pre-litigation investigation or to exercise pre-litigation due diligence, (2) that the plaintiff should have known its claim was meritless and/or lacked substantive strength, (3) that the plaintiff initiated litigation to attempt to extract settlements from defendants wanting to avoid costly litigation, (4) that a party proceeded in bad faith, and (5) litigation misconduct." *GLG Farms LLC v. Brandt Agric. Prods. LTD*, 2018 U.S. Dist. LEXIS 247805, at *6 (D.N.D. Jan. 24, 2018) (citing *Bayer Cropscience AG v. Dow Agrosciences LLC*, No. 12-256, 2015 U.S. Dist. LEXIS 30752, 2015 WL 1197436, at *4 (D. Del. Mar. 13, 2015) (citations omitted)).

Here, Defendants contend that this matter is exceptional because Plaintiff asserted an infringement claim it knew or should have known was meritless. D.I. 35 at 9. As evidence, Defendants note that Plaintiff received two pre-litigation letters from Defendants that called into question the validity of Claim 59. *Id.* According to Defendants, the second letter, dated January 7, 2022, stated specific prior art, including U.S. Patent Nos. 4,622,959 ("Marcus") and 6,579,293 ("Chandran"), that rendered Claim 59 invalid. D.I. 35 at 3. Defendants contend that the first letter, which was sent four years before Plaintiff initiated litigation before this Court, similarly identified Marcus and Chandran as invalidating prior art sources. *Id.* Thus, according to Defendants, Plaintiff and its counsel knew about Marcus and Chandran prior to filing this action" and "knew that Defendants would rely on both prior art patents to invalidate [C]laim 59." *Id.* at 10. Yet, Defendants contend that Plaintiff intentionally pursued a baseless infringement claim against Defendants in February 2022 for the sole purpose of extracting "a quick pay day resulting from an unreasonable and exploitative settlement with Defendants." *Id.*

When viewed in isolation, Defendants' pre-litigation letters fall short of demonstrating that Plaintiff knew or willfully ignored the invalidity of Claim 59. Indeed, while the letters referenced both Marcus and Chandran as invalidating sources, Defendants concede that Marcus and Chandran were merely two of several prior art sources noted in the letters. *Id.* at 3. Beyond noting the prior art sources and asserting Defendants' belief that Claim 59 was invalid, however, the letters did not explain or detail how or why the identified prior art sources invalidated Claim 59. D.I. 38 at 1-2. Thus, "at the time Defendants' counsel sent letters to [Plaintiff] identifying Marcus and Chandran, [Plaintiff] was not in possession of Defendants' proposed claim constructions and expert opinions." *Id.* at 15. Nor did Plaintiff possess Defendants' invalidity positions. *See Med. Designs v. Med. Tech.*, 786 F. Supp. 614, 628 (N.D. Tex. 1992). While a pre-litigation letter need not provide such detail, Defendants do not claim that a review of either Marcus or Chandran would have undoubtedly dispelled Plaintiff of its belief in the validity of Claim 59. *Cf. Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F.Supp.3d 329, 336 (S.D.N.Y.2014) (finding that "the most basic pre-suit investigation would have revealed" that plaintiff's infringement claims would fail). Rather, Defendants concede that "[t]he use of an expert witness during the IPR Proceeding was necessary and relied upon heavily by the [Board] in invalidating [C]laim 59." D.I. 35 at 18. Thus, it follows that Defendants could not have expected Plaintiff to know from the mere references to Marcus and Chandran in pre-litigation letters alone that Claim 59 was invalid.

In determining whether this case is exceptional, however, the Court must look beyond the pre-litigation letters and must consider the "totality of the circumstances." *Id.* Having done so, the Court is persuaded that this matter is exceptional for at least three reasons.

*First*, Plaintiff failed to demonstrate that it conducted *any* pre-litigation investigation into the strength of its infringement claim before filing this litigation. "In considering 'the

4

unreasonable manner in which the case was litigated,' . . . courts [] look to the plaintiff's 'pre-filing investigation,' among other factors." *WPEM, Inc. v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *6 (E.D. Tex. Feb. 4, 2020), aff'd, 837 F. App'x 773 (Fed. Cir. 2020) (internal citations omitted). Thus, where a court is presented with evidence that a pre-suit investigation was conducted and that the plaintiff held a good faith belief in its claim prior to filing its case, the court is likely to find that the case was litigated reasonably even where the plaintiff did not ultimately prevail. *See NOVA Chemicals Corp. v. Dow Chem. Co.*, No. CV 13-1601, 2015 WL 5766257, at *4 (D. Del. Sept. 30, 2015), *aff'd sub nom. Nova Chemicals Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012 (Fed. Cir. 2017) ("NOVA has put forth a great deal of evidence in the form of declarations describing its pre-suit investigation, which shows that NOVA understood the seriousness of the claims it was making, and in recognition of that fact took extra precautions to have the complaint reviewed independently before it was filed. NOVA has, thus, shown that it had a good faith belief that there was a reasonable basis on which to proceed with the independent suit."). On the other hand, if a court finds that a plaintiff could have discovered defendant's grounds for invalidity or unenforceability "with a bare minimum of diligence," plaintiff's failure to conduct a pre-suit investigation will support a finding that the case is exceptional. *WPEM*, 2020 WL 555545, at *15.

In the present case, there is no dispute that Defendants notified Plaintiff of Marcus and Chandran several years prior to the date in which this matter was filed. While the Court noted *supra* that Defendants' pre-litigation letters, without more, do not demonstrate that Plaintiff had knowledge of the invalidity of Claim 59, Plaintiff cannot dispute that, at minimum, the letters placed Plaintiff on notice of Defendants' intent to challenge the validity of its patent. Thus, before filing its infringement claim, Plaintiff should have conducted some investigation into the validity

5

of Claim 59. *WPEM*, 2020 WL 555545, at *17-19. Yet, as Defendants note, Plaintiff presents no evidence that it engaged in *any* form of pre-suit investigation. D.I. 40 at 1. Given no evidence to the contrary, the Court is left to assume that Plaintiff did not conduct a pre-suit investigation before initiating litigation against Defendants for infringement. *See Id.* at *2, *17-19 (finding that plaintiff conducted no pre-suit investigation where "[o]ther than attempting to establish clean title to the Asserted Patent in WPEM and developing claim charts for infringement, neither WPEM nor Mr. Taylor describe any other steps they took as part of a pre-suit investigation prior to filing WPEM's complaint on April 18, 2018"). Such an "absence of any reasonable pre-suit investigation" by Plaintiff "counsel[s] in favor of an 'exceptional case' finding . . . ." *Novartis Corp. v. Webvention Holdings LLC*, No. CCB-11-3620, 2015 WL 6669158, at *4 (D. Md. Oct. 28, 2015); *see also Enpat, Inc. v. Microsoft Corp.*, 26 F. Supp. 2d 811, 813 (E.D. Va. 1998) (finding that where "plaintiffs have presented no evidence that Enpat, its counsel, or its expert performed any prefiling investigation of these products," this lack of evidence weighed in favor of an exceptional case determination).

*Second*, Plaintiff's failure to defend the validity of Claim 59 during IPR demonstrates that this matter is exceptional. As Defendants note, Plaintiff made no attempt during IPR "to explain or point to any feature in [C]laim 59 that was not disclosed in either Marcus or Chandran, [Plaintiff] never offered any claim construction position that could raise any issue regarding anticipation of [C]laim 59 by Marcus or Chandran, and [Plaintiff] offered no expert testimony to contest the expert testimony of Defendants' expert that claim 59 was anticipated by Marcus and Chandran." D.I. 35 at 9. Given that Plaintiff pursued this litigation in the first instance, it is extraordinary that Plaintiff "never articulated an infringement theory" during IPR and instead chose to concede the invalidity

of its patent. *See Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1116 (C.D. Cal. 2015).

However, this matter must be distinguished from cases where parties fail to prevail in defending the validity of their patents during IPR. *See Voice Int'l Inc v. Oppenheimer Cine Rentals LLC*, No. LACV1508830JAKKSX, 2022 WL 4596668, at *5 (C.D. Cal. July 13, 2022) ("[The patentee] was entitled to respond in good faith and," even though the patentee "ultimately did not prevail on the merits, this does not make his conduct vexatious or in bad faith"). Indeed, "[w]here a party set[s] forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." *Small v. Implant Direct Mfg. LLC*, No. 06–683, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014). Here, the Board recognized that Plaintiff did not provide any "specific arguments challenging [Defendants'] position regarding the patentability of the challenged claim" either in response to Defendants' petition for institution of IPR or Defendants' substantive claims of invalidity. Hutton Decl., Ex. J at 26, 32. While Plaintiff contends that it "*could have*" presented substantive evidence to support the validity of Claim 59, this argument does not change the fact that Plaintiff ultimately did not do so. *See* D.I. 38 at 17.

Plaintiff contends, however, that its decision to forgo contesting the invalidity of Claim 59 may have been driven by "strategic" considerations, including its interest in seeking to amend Claim 59 in place of spending its limited time and resources to preserve the original claim.[1] *Id.* at

---

[1] With respect to its decision to concede invalidity during IPR, for instance, Plaintiff explains that the decision to forgo responding to Defendants' invalidity claims *could have* been made for "strategic reasons," including to allow Plaintiff to focus its limited resources on seeking to amend the scope of Claim 59. D.I. 38 at 13 ("[I]f [Plaintiff] believed that it could prevail in this case with a narrower claim, it was well within its right not to spend time and money attempting to preserve original Claim 59, even if it believed it could be successful in doing so"). Alternatively, Plaintiff contends that the decision "could have been based on Brumfield[,]" which was a prior art reference that "Defendants led with in the IPR[]" but never disclosed to Plaintiff in its pre-litigation letters.

7

13. Yet, in its petition for amendment, Plaintiff noted that it sought to amend Claim 59 *in the alternative* in case Claim 59 did not survive IPR. D.I. 39, Ex. 4 at 6. Additionally, once the Board issued a negative guidance to its petition to amend Claim 59, it should have been apparent to Plaintiff that its infringement claim would likely fail given that Plaintiff had already conceded invalidity of Claim 59 and the Board expressed that Plaintiff would not be allowed to amend the claim. Yet, Plaintiff does not dispute that, immediately following the Board's negative guidance, Plaintiff increased its settlement offer despite the expected fate of Claim 59. D.I. 40 at 5. Because Plaintiff had an ongoing obligation to assess the soundness of its infringement claim throughout litigation, Plaintiff's attempt to demand increased settlements even after the Board's negative guidance supports a finding that Plaintiff intended to use this litigation "to extract an unreasonable and exploitive settlement" from Defendants. D.I. 35 at 9.

*Third,* Plaintiff's utter failure to present the Court with any substantive arguments in favor of its litigation position, both during the district court litigation and in response to this motion, demonstrates that this matter is exceptional. *Cf. Otsuka Pharm. Co. v. Sandoz, Inc.*, No. CV 07-1000 (MLC), 2015 WL 5921035, at *6 (D.N.J. Oct. 9, 2015) ("The defendants here put forth some good faith argument in favor of their positions."). In seeking fees, Defendants maintained that Plaintiff pursued litigation without an objective basis that Claim 59 was valid. D.I. 35 at 6. Yet, in response to this claim, Plaintiff did not make any attempt to offer substantive arguments to support its position as to the validity of Claim 59. Given Plaintiff's continued failure to present any basis that Claim 59 is valid throughout the district court litigation, IPR, and in response to this

---

*Id.* at 13-14. In making these arguments, however, "Plaintiff relies merely on speculation and hypotheticals of reasons which 'could be' why it did not argue that [C]laim 59 was valid." D.I. 40 at 3. At no point does Plaintiff affirmatively defend its decision to concede invalidity.

present motion, the Court is once again left to assume that no such basis exists. *Nova Chemicals Corp. (Canada) v. Dow Chemical Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017).

In sum, taken together, Plaintiff's conduct throughout the pendency of this litigation persuades the Court that this is an exceptional case under § 285.

### B. Defendants are entitled to recover fees incurred during the district court litigation.

Courts in the Third Circuit are directed to calculate attorney fees pursuant to the "lodestar" approach. *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir.2000). The lodestar amount results from multiplying the amount of time reasonably expended by reasonable hourly rates. *Id.* The Court may, however, exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The prevailing community market rates assist the court in determining a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

As a preliminary matter, Defendants seeks to recover the fees incurred in the district court litigation before this Court and fees incurred during the IPR proceedings. Defendants concede, however, that courts are split on whether § 285 permits the award of fees incurred during IPR. On May 20, 2024, the Federal Circuit resolved this question and found "that fees incurred in the parallel IPR proceedings are not recoverable under § 285." *Dragon Intell. Prop. LLC v. DISH Network L.L.C.*, 101 F.4th 1366, 1371 (Fed. Cir. 2024). Accordingly, Defendants are entitled to recover only those fees incurred during and within the district court litigation.

In litigating before this Court, Defendants contend that they incurred attorneys' fees in the amount of $52,573. Defendants assert that its total fees incurred during the district court litigation are "reasonable for each particular purpose," and Defendants submit declarations and invoices

9

supporting the hours spent and the amount charged for each hour. Defendants also assert that the fees charged in this matter are "below the national averages" for comparable matters according to the American Intellectual Property Law Association ("AIPLA") 2021 Report of the Economic Survey. Plaintiff does not dispute or contest the amount of fees sought by Defendants. Based on the evidence presented by Defendants, including that the rates charged to Defendants are below the AIPLA rates for intellectual property cases, the Court finds that the amount sought by Defendants of $52,573 is reasonable under the circumstances. Thus, Defendants' Motion for Fees is **GRANTED** in the amount of $52,573.

\*\*\*

At Wilmington, this 3rd day of October, 2024, IT IS HEREBY ORDERED that:

1. Defendants Nextremity Solutions, Inc., Zimmer Biomet Holdings, Inc., and Zimmer, Inc.'s ("Defendants") Motion for Attorneys' Fees and Costs is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. Defendants are awarded **$52,573** in attorneys' fees and expenses. Defendants' Motion for Attorneys' Fees and Costs is otherwise **DENIED**.

GREGORY B. WILLIAMS<br>
UNITED STATES DISTRICT JUDGE